IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARIO THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIV. ACT. NO. 1:19-cv-48-TFM-M |
| | ) |
| ASHTON & COMPANY, INC. | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is *Defendant's Motion for Summary Judgment and Supporting Brief* (Doc. 56, filed July 31, 2020). Plaintiff Mario Thomas filed a response in opposition to the motion (Doc. 61, filed August 24, 2020) and Defendant Ashton and Company, Inc. filed a reply in support of the motion (Doc. 63, filed August 31, 2020). After a careful review of all the written pleadings, motions, responses, replies, exhibits, and the relevant law, the Court **GRANTS** the motion for summary judgment (Doc. 56) for the reasons articulated below.

**I.   PARTIES AND JURISDICTION**

Plaintiff Mario Thomas ("Plaintiff" or "Thomas") asserts claims under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I) and 42 U.S.C. § 1981 (Count II) pursuant to this Court's federal jurisdiction under 28 U.S.C. § 1331. The parties do not contest jurisdiction or venue, and the Court finds that sufficient support exists for both.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

Thomas filed a complaint on February 6, 2019, alleging Defendant Ashton and Company, Inc. ("Defendant" or "Ashton") terminated his employment because of his race and gender in

violation of both Title VII and 42 U.S.C. § 1981. Doc. 1 at ¶¶ 41, 51, 61. Prior to filing the complaint, Thomas timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the last discriminatory act and filed this lawsuit within 90 days after receipt of the right-to-sue letter issued by the EEOC. *Id*. at 11-14, Ex. A-B. As relief, Thomas seeks injunctive and monetary relief that he may be legally entitled to. Doc. 1 at ¶¶ A-F. Ashton filed its answer to the complaint on May 13, 2019. Doc. 6. On July 31, 2020, Ashton filed a Motion for Summary Judgment and Supporting Brief arguing that Thomas' claims fail as a matter of law because he cannot establish a prima facie case of discrimination and because he was terminated for a legitimate and non-discriminatory reason. (Doc. 56). Thomas filed a response in opposition to the motion on August 24, 2020 (Doc. 61) to which Ashton filed a reply in support of the motion on August 31, 2020 (Doc. 63). Thus, the motion for summary judgment is ripe for review.

      Ashton, a union contractor concentrating in heavy industrial and specialty contracting services, is an equal opportunity employer based in Mobile County. On February 19, 2018, Ashton hired Thomas through the Iron Workers Local 798 union to work as an iron worker apprentice at the Barry Steam Plant. Upon being hired, Thomas received a copy of Ashton's Safety and Health Policies, Procedures, and Plans ("Safety Policy") and the Southern Company's Project Security Rules governing work on the jobsite. Doc. 55-1 at ¶ 3. Ashton's Safety Policy declares "No fighting, no workplace violence…zero tolerance." Doc. 55-1 at 11. Similarly, the Southern Company's Project Security Rules prohibit "fighting" and "[t]hreats of violence." Doc. 55-1 at 38. The parties do not dispute the existence of Ashton's zero-tolerance policy on fighting and workplace violence. The dispute between the parties is whether Ashton's termination of Thomas' employment constitutes race and sex discrimination.

As relevant background, Ashton's total workforce in 2018 consisted of 72% White employees and 20% African-American employees. Doc. 63 at n. 8; Doc. 62-5 at ¶ 1. In 2018 Ashton terminated 59 employees—38 White employees (64%) and 17 African-American employees (29%). Doc. 56 at 8. On June 23, 2018, Ashton terminated Thomas's employment for allegedly violating Ashton's zero-tolerance fighting policy. Ashton contends that Thomas' termination was lawful due to an altercation that occurred between Thomas and another co-worker, Kevin Johnson ("Johnson"). Ashton reasons that this altercation allegedly violated its zero-tolerance fighting policy.

According to Thomas, Johnson requested that Thomas "hold" money for him because Johnson tends to spend money a lot.[1] Thomas stated that he held about forty to fifty dollars for Johnson to make sure he had money to eat with or get a room. Doc. 55-2 at 6. On June 23, 2018, during their work shift at the Barry Steam Plant, Johnson approached Thomas several times demanding the money that Thomas "held for him." Johnson aggressively asked Thomas, "where['s] my mother fucking money." Thomas refused to give the money to Johnson and told Thomas to, "just wait a few minutes and I'm going to give you your money." Johnson explained, "I'm working right now, I don't want to be making no transaction and making it look as if we're doing something wrong." *Id*. at 4. About five minutes later, Johnson approached Thomas again and declared, "I want my mother fucking money" and "I want my money now or else, this is going to be something else." *Id*. at 8. Thomas perceived this comment as a threat but insists that Johnson did not touch him and did not violate his space, he just said "disrespectful, vulgar words." *Id*. at 7-8. Thomas responded by ensuring Johnson that he had his money but encouraged him to calm down since the two were at work. Manning Booker ("Booker"), a foreman at Ashton as well as

---

[1] Booker's Report described the money being "held" as a loan. *See* Doc. 55-3 at 3.

Thomas and Johnson's supervisor, intervened to see what was going on.  Thomas ensured Booker that nothing was going on, but Johnson responded, "yeah, it is a problem, this – this dude right here, [Thomas] think I'm a – he think I'm a pussy."  Booker intervened and had a few words with Johnson, then escorted him to the office and Thomas continued working.  Booker then returned and called Thomas to report to the office to speak with Ashton management.  *Id*. at 13.

Booker reported the incident to Russell Dyess ("Dyess"), Ashton's Project Manager.  In the handwritten employee statement of events, Booker states he witnessed Johnson approach Thomas in a hostile manner and confront him about money he loaned Thomas.  He wrote that Johnson was "waiving his finger in [Thomas'] face and tapping him on his chest with the back of his hand."  Doc. 55-3 at 3.  Thomas "said he had no problem paying him back the money, but [Johnson] should not be approaching him in that manner.  According to Booker, when the situation escalated, he intervened to prevent it from becoming physical.  He distanced the two employees and called for assistance, because he perceived the situation as a liability for the company.  *Id*.  In Booker's declaration, he added that Thomas knocked Johnson's hand down saying, "I'm gonna pay you your f'n money" and that he was "going to kick his ass."  *Id*. at 1.  Booker concedes that Thomas was not the aggressor, but did not believe that Thomas and Johnson could work together without the risk of altercations.

Dyess met with Thomas and Johnson and gave both employees a chance to explain their version of the events.  According to Dyess' deposition, Thomas explained that Johnson loaned him some money and approached him in a hostile way demanding the money.  Doc. 55-4 at 11.  Thomas also stated that he was not the aggressor and that Johnson threatened him.  When Johnson put his finger in Thomas' face and on his chest, Thomas slapped it away from him.  *Id*.  Johnson's account of events denied the aggressive behavior.  *Id*.  Following the meeting with both employees, Dyess

debriefed with Ashton's management staff and reviewed Ashton's Safety Policy and the Southern Company's Project Security Rules. Dyess concluded that pursuant to these rules, both employees violated the zero-tolerance fighting policy by engaging in a physical altercation (Johnson's act of tapping Thomas' chest with the back of his hand and Thomas' act of slapping Johnson's hands away) and by exchanging threats of physical violence to one another. Consequently, Dyess made the decision to terminate both employees. *Id*. at 23.

Thomas alleges that Ashton terminated him because of his race in violation of Title VII and 42 U.S.C. § 1981. The basis for these claims are allegations that three other White employees—Kolby McClure, Jake McClure, and Forrest Murphy—"engaged in the same or similar conduct but remained employed." Doc. 1 at ¶¶ 46-48. Specifically, Thomas alleges that Kolby McClure and Jake McClure "got into a physical fight on the floor and were not terminated," and that Forrest Murphy "got into a verbal altercation with a woman of African ancestry, Kuri[n] Brown, during which he called her a Bitch," and none of these employees were terminated. *Id*. at 25. Additionally, Thomas alleges that Ashton terminated him because of his sex in violation of Title VII. The basis for this claim is "Kuri[n] Brown, a woman engaged in the same or similar conduct but remained employed." *Id*. at ¶ 57.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106

S. Ct. at 2510. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they must have a real basis in the record. *Id.*.

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23, 106 S. Ct. at 2252. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365,

1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## IV. DISCUSSION AND ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Ashton moves this Court to enter summary judgment in its favor as to Thomas' Title VII and 42 U.S.C. § 1981 claims. Ashton argues that Thomas was terminated for a legitimate and non-discriminatory reason. Ashton contends that it is entitled to judgment as a matter of law because there is no genuine issue of material fact. Ashton argues that Thomas' claims fail as a matter of law because he cannot establish a prima facie case of discrimination and there is no substantial evidence to show that Ashton's reason for terminating Thomas was pretext for discrimination.

**A.   Racial Discrimination**

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, **sex**, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Similarly, section 1981 protects an individual's right to be free from racial discrimination in the "making, performance, modification, and termination of contracts." 42 U.S.C. § 1981(a)-(b). "Title VII and [42 U.S.C.] § 1981 'have the same requirements of proof and use the same analytical framework.'" *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256-57 (11th Cir. 2012) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Consequently, the Court will address them concurrently.

"Direct evidence of discrimination is 'evidence which reflects a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1357 (11th Cir. 1999)). Direct evidence is "evidence that, if believed, proves [the] existence of [a] fact without inference or presumption." *Id.* (quoting *Burrell v. Bd. of Trs. of Ga.*

*Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)). "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)).

Thomas has identified White employees who allegedly engaged in the same actions as Thomas but were not terminated. This is not direct evidence that Ashton terminated Thomas because of his race. Rather, it requires inference. Therefore, Thomas must rely on circumstantial evidence to support his discrimination claims.

Since Thomas relies on circumstantial evidence, the applicable burden-shifting framework is outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973) [hereinafter *McDonnell Douglas*], and its progeny.

> If a Title VII plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas* [ ], 411 U.S. [at] 802-03, 93 S. Ct. [at] 1824-25 [ ]). If the employer articulates a legitimate, nondiscriminatory reason for its actions, "the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *see also Tex. Dep't of Cmty. Aff. v. Burdine*, 450 U.S. 248, 255-56, 101 S. Ct. 1089, 1094-95, 67 L. Ed. 2d 207 (1981). The plaintiff must meet the reason proffered head on and rebut it. *Wilson*, 376 F.3d at 1088. If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc).

*Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).

1. **Prima Facie Case**

To establish a *prima facie* case, Thomas must show he "(1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class or that her employer treated similarly situated

employees outside of her class more favorably." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

Thomas argues he has established a prima facie case for racial discrimination pursuant to the *McDonnell Douglas* analysis. The first three elements of a prima facie case are not in dispute. Undoubtedly, Thomas is a member of a protected class (Black), qualified for his position as an Iron Worker at Ashton, and was discharged from this position on June 23, 2018. Thus, the pertinent issue is whether Ashton treated Thomas less favorably than a similarly situated individual outside of his protected class. Thomas contends that Ashton did treat him less favorably because he was discharged from his position though his White comparators, Kolby McClure, Jake McClure, and Forrest Murphy, engaged in the same behavior but were not discharged.

Ashton argues that Thomas cannot establish a prima facie case of intentional discrimination on the basis of race because he cannot demonstrate that Ashton treated him less favorable than a similarly situated individual outside of his protected class. Doc. 56 at 19. To fulfill this requirement of the *McDonnell Douglas* framework, Thomas and his comparators must be "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc). The Eleventh Circuit has explained that "all material respects" means "a valid comparison will turn not on formal labels, but rather on substantive likenesses." *Id*. at 1228. "Pursuant to *Lewis,* a comparator should, generally, have (1) 'engaged in the same basic conduct (or misconduct);' (2) 'been subject to the same employment policy, guideline, or rule;' (3) 'been under the jurisdiction of the same supervisor;' and (4) shared a similar 'employment or disciplinary history' to the plaintiff." *Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x. 453, 457 (11th Cir. 2020) (quoting *Lewis*, 918 F.3d at 1227-28). Thus, the plaintiff and his comparators must be sufficiently similar, in an objective sense, that they cannot be reasonably

distinguished. *Lewis*, 918 F.3d at 1228 (quotations omitted).

a.  **Kolby McClure and Jake McClure Incident**

In support of his race discrimination claim, Thomas cites the alleged incident between Kolby McClure and Jake McClure as his purported comparators.[2] Ashton argues that according to Kolby, Jake, and Ashton's Safety Inspector Keith Hale ("Hale"), the two brothers "had a twenty to thirty-second long verbal disagreement at the Barry Steam Plant sometime in 2017 or 2018 over the use of a golf cart (referred to as a 'buggy') during which no physical contact was made and no threats of violence were exchanged." Doc. 56 at 14. Hale stated, "[A]ll I heard was loud voices and some arguing going behind – going on behind me. I turned around, and I said, hey, y'all need to stop it and let's get back to work, and they stopped and went back to work." Doc. 55-8 at 2. Hale considered the dispute a minor incident that did not merit reporting to Ashton's management.

This account of the incident is inconsistent with the account given by Tavarezs Williams ("Williams"), a former Ashton employee. According to Williams' deposition, he "witnessed two of [his] fellow employees [get] into a physical confrontation." Doc. 60-1 at 1. Williams explains that he witnessed Jake throw water onto Kolby, causing Kolby to get out of the golf cart and start swinging at Jake until Hale and Dyess stopped the altercation. *Id*. Williams states he saw both Jake and Kolby throw and land punches hitting each other's upper body. Williams also states that he witnessed the fight while he was sitting in a forklift 8 to 10 feet from the buggy being driven by Michael Lollar ("Lollar"). Ashton argues that Williams's deposition is not credible because Lollar was suspended from Ashton, and therefore not possibly present during the timeframe in which Williams claims the confrontation occurred. Further, Lollar declared that he "never witnessed any physical confrontation or fight of any kind between Jake and Kolby McClure while

---

[2] The Court refers to Kolby and Jake by their first name since they share the same last name.

[he] worked on the Barry Steam Plant project." Doc. 55-10 at 1.

Furthermore, Ashton contends that "[t]he brief and trivial verbal disagreement between Jake and Kolby is so distinguishable from the physical altercation between Thomas and Johnson that certainly neither Jake nor Kolby can be considered 'similarly situated in all material respects' to Thomas." Doc. 56 at 21 (quoting *Lewis*, 918 F.3d at 1227-28.). Thomas argues that Kolby and Jake were engaged in the same alleged misconduct—a verbal and/or physical altercation. Thomas also argues they were all employees subject to the same employment policies at the Barry Steam Plant where Dyess was the project manager.

Ashton makes an essential distinction between Thomas, Jake, and Kolby's employment history. Specifically, Ashton additionally argues that Kolby and Jake are not similarly situated to Thomas in all material respects because of their familial relationship with Ashton's management. "Here, it is undisputed that Jake and Kolby are related to Ashton's President, Scottie McClure (their uncle), and construction manager, Bill McClure (their father)." Doc. 56 at 27. Ashton posits that the alleged disparate treatment Jake and Kolby received is on a basis of nepotism as opposed to racial discrimination.

The Court finds Thomas, Jake, and Kolby are not comparators because they are not "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. Specifically, they were not under the jurisdiction of the same supervisor and they did not engage in the same basic misconduct. Jake and Kolby fail as comparators as a matter of law because Dyess was not their decision-maker. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (affirming summary judgment in favor of employer where plaintiff relied on a comparator who received disparate treatment from a different decision-maker). The Eleventh Circuit has found that "[d]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII

analysis'…because the fact that different supervisors addressed instances of misconduct may explain a difference in the means of discipline employed to address the misconduct." *Thomas v. Dept. of Corrections for Ga.*, 377 F. App'x. 873, 880 (11th Cir. 2010) (quoting *Jones*, 874 F.2d at 1541).

The Jake/Kolby incident is different than the situation involving Plaintiff. Booker reported to Dyess that the incident involved both Plaintiff and Johnson engaging in physical contact and exchanging threats of violence. When Plaintiff and Johnson were instructed to disperse they came back at one another compelling Booker to break it up. Contrary to this incident, the Jake/Kolby incident was not reported to Ashton's management and Dyess, Thomas'decision-maker, was not aware of the Jake/Kolby incident until Thomas filed his Charge of Discrimination with the EEOC.[3] The Jake/Kolby incident did not involve any physical contact or threats of violence and when their supervisor, Hale, instructed them to cut it out the incident ended immediately. Furthermore, Jake and Kolby's familial relationship with Ashton's management and Thomas' lack of such a relationship is another objective distinction, though the Court need not decide that matter since the comparator analysis already fails.

**b.   Forrest Murphy and Kurin Brown Incident**

Thomas also argues that the altercation between Forrest Murphy ("Murphy"), a White male, and Kurin Brown ("Brown"), a Black female, qualifies Murphy as a comparator in support of Thomas' race discrimination claim.[4] According to Murphy, he was helping a laborer lower bags of dirt from the scaffold when one of the bags got caught on the scaffold and tore open. When

---

[3] *See Bell v. Crowne Mgmt., LLC*, 844 F. Supp.2d 1222, 1228 (S.D. Ala., Jan. 5, 2012) ("[W]hat matters when comparing the misconduct of employees in a discrimination suit are the facts of each incident as they appeared to the decision-maker at the time discipline was administered, not those that are asserted years later.").
[4] Brown will be discussed later in the opinion in relation to Thomas' sex discrimination claim.

Murphy saw Brown, who he states was supposed to be on the scaffold helping, he asked her to put another bag around the torn one as he picked it up. When Brown refused by saying, "It's not my job," Murphy responded, "Oh yes it is, I'm helping you out!" In Murphy's employee statement he wrote, "She refused so I tossed the empty bag at our feet and she went crazy! 'Don't you go throwing stuff at me' she replied and came at me with a 2 foot framing square. I put my hands up to protect myself and got out of there. I never laid a hand on her!" Doc. 55-4 at 34.

Brown's account of the altercation is different. Brown reports that Forrest approached her stating, "[T]he f**king bag has a hole in it and I'm over here helping Cotton do your s**t." Doc. 55-4 at 32. When she told Murphy to sit the bag down he, "yelled at [her] to 'open the f**king bag,' referencing the empty bag he was holding." *Id*. After she told Murphy to just sit it down, he took the empty bag and threw it on or at Brown. *Id*. Brown responded, "Do not throw stuff on me." Then Murphy stuck his arm out and nudged Brown out of the way while saying "move out of my f'n way, stupid b*tch." *Id*. In response, Brown reports that she walked off to go find someone in management. *Id*.

Thomas contends that Murphy is a proper comparator for the race discrimination claim. Thomas argues that Murphy was engaged in the same alleged misconduct (a verbal and/or physical altercation), subject to the same employment policies at the Barry Steam Plant, and under the supervision of the same project manager, Dyess. Ashton contends that Murphy is not a proper comparator because the Murphy/Brown incident was materially different from the Thomas/Johnson incident. Ashton reasons that Murphy and Brown initially downplayed any physical contact when interviewed, agreed that they could continue to work together without future issues, and there was no witness to the incident to substantiate either side's initial written allegations of physical contact and/or threats of violence. The Court agrees. These differences are

in stark contrast to the Thomas/Johnson incident that was witnessed by Thomas's supervisor. Thus, the Court finds Thomas and Murphy are not comparators because they are not "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. The lack of witnesses meant the supervisors did not have sufficient evidence to corroborate either account and therefore could not factually resolve it at the time.

The Court finds that Ashton is entitled to judgment as a matter of law because Thomas fails to establish a prima facie case of racial discrimination. *See Pace v. S. Ry. System*, 701 F.2d 1383, 1391 (11th Cir. 1983) ("[F]ailure to establish a prima facie case warrants summary judgment."). Since none of Thomas's alleged white comparators are similarly situated in all material respects, Thomas fails to establish that Ashton treated him less favorably than a similarly situated individual outside of his protected class.

**2.      Legitimate, Non-discriminatory Reason**

However, even if Thomas could establish a prima facie case of racial discrimination, which the Court finds he cannot, "the burden then shifts to the employer to rebut it by producing evidence that the employer's action was taken for some legitimate, non-discriminatory reason. If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." *Smith*, 644 F.3d at 1325-26. Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")). The Eleventh Circuit has ruled that "if the employer fired an employee

because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is 'not because of race'…." *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987); *see also Howard v. Jackson Cty. Health Care Auth.*, Civ. Act. No. 5:15-393, 2016 WL 2766782, 2016 U.S. Dist. 63379 LEXIS at * 32 (N.D. Ala. May 13, 2016) ("An employer's honest belief that an employee violated a company policy constitutes a legitimate, nondiscriminatory reason for termination.") (collecting cases).

Here, it is clear that Dyess terminated Thomas' employment because he concluded that Thomas violated Ashton's zero-tolerance fighting policy and the Southern Company's Project Security Rules' strict prohibition of fighting and threats of workplace violence. Doc. 56 at 30. Dyess decided to terminate Thomas (and Johnson) after engaging in a deliberative business personnel decision-making process. This process included interviewing both Thomas and Johnson, meeting with Ashton's management staff, and reviewing the Southern Company's Project Security Rules and Ashton's Safety Policy. It is undisputed that Booker told Dyess he witnessed Johnson touch Thomas's chest and Thomas knock Johnson's hands down, and that he heard Thomas tell Johnson he was going to "kick [his] ass." Doc. 55-4 at 13 – 18; Doc. 55-1 at ¶ 5; Doc. 55-3 at ¶ 3. It is also undisputed that Dyess relied on Booker's statements in deciding to terminate both Johnson and Thomas. Doc. 55-1 at ¶ 8. Accordingly, Ashton has met its "exceedingly light" burden of articulating a legitimate, nondiscriminatory reason for its decision to terminate Thomas's employment. *See, e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).

3.  **Pretext of Discrimination**

Since Ashton has articulated legitimate, nondiscriminatory reasons for its termination of Thomas, "the presumption of discrimination is rebutted, and the burden of production shifts to the

plaintiff to offer evidence that the alleged reason[s] of the employer [are] pretext for illegal discrimination." *Crawford*, 482 F.3d at 1308 (quoting *Wilson*, 376 F.3d at 1087). This analysis "proceeds to a new level of specificity…." *Smith*, 644 F.3d at 1326. "[I]f a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." *Id*. Thomas' burden is to show "*both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotations omitted; emphasis in original). To establish pretext, Thomas "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Ashton's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atlantic Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quotations omitted). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Id*. "When an employer has 'contradictory accounts of historical events, the employer can lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice." *Brown v. Mobile Cnty. Comm.*, 79 F. Supp. 3d 1259, 1276 (S.D. Ala. 2015) (quoting *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000)).

Ashton argues that Thomas' race discrimination claims fail because he cannot establish that Ashton's legitimate nondiscriminatory reason for terminating him was pretext for discrimination. Thomas argues that Ashton's "shifting reasons" for terminating his employment establish pretext and compel this Court to deny Ashton's motion for summary judgment. *See*

*Landolfi v. City of Melbourne*, 515 F. App'x 832, 835 (11th Cir. 2013). The Eleventh Circuit has held that pretext is not established when "the record reveals that the [defendant] provided consistent reasons for [plaintiff's] termination. *Silvestri v. Jupiter Inlet Colony, Fla.*, 614 Fed. Appx. 983, 985 (11th Cir. 2015). Here, Ashton has consistently stated that Thomas was terminated because he violated the zero-tolerance fighting policy. *See* Doc. 63 at 16-17. Thus, the Court finds that the pretext element has not been met because Thomas has failed to establish that Dyess acted dishonestly in his investigation and decision to terminate Thomas's employment and that discrimination was the real reason for his termination. As the Eleventh Circuit has emphasized, an employer may take an employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984). After review and careful consideration of the evidence, the Court finds that Thomas fails to demonstrate a genuine dispute in that the reasons offered by Ashton are pretext for discrimination. The Court cannot and will not second-guess the wisdom of an employer's decision. Therefore, Thomas fails to show a genuine issue of material fact regarding pretext and summary judgment is due to be granted.

**B.     Sex Discrimination**

Thomas's Title VII sex discrimination claim also relies on circumstantial evidence. Consequently, the Court will analyze it under the same *McDonnell Douglas* burden-shifting framework mentioned in Section IV(A).

**1.     Prima Facie Case**

Similar to Thomas's Title VII race discrimination claim, Ashton argues that Thomas cannot establish a prima facie case of sex discrimination because he fails to prove that Ashton treated him less favorable than a similarly situated individual outside of his protected class. Thomas argues

that he and his alleged comparator, Brown (a Black female), were "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226.  Thomas contends that during the Murphy/Brown incident, Brown allegedly engaged in the same actions as Thomas but was not terminated.  As the Court discussed previously, Brown (like Murphy) fails as a comparator because she is not similarly situated to Thomas in all material respects.  Specifically, Murphy and Brown initially downplayed any physical contact when interviewed, agreed that they could continue to work together without future issues, and there was no witness to the incident to substantiate either side's initial written allegations of physical contact and/or threats of violence.  This is materially different from the incident involving Plaintiff that was physical and witnessed by a supervisor.  Thus, the Court finds Thomas fails to establish a prima facie case of sex discrimination.

**2.      Legitimate, Non-discriminatory Reason**

Even if Thomas could establish a prima facie case of sex discrimination, which he cannot, the Court finds Ashton has satisfied its burden under the *McDonnell Douglas* framework of demonstrating a non-discriminatory reason for terminating Thomas's employment.  As discussed previously, Dyess terminated Thomas' employment because he concluded that Thomas violated Ashton's zero-tolerance fighting policy and the Southern Company's Project Security Rules' strict prohibition of fighting and threats of workplace violence.  Accordingly, Ashton's legitimate, nondiscriminatory reason rebuts Thomas' presumption of discrimination and shifts the burden back to Plaintiff.

**3.      Pretext of Discrimination**

As discussed previously, Thomas fails to establish that Ashton's legitimate, non-discriminatory reason for terminating him was pretext for discrimination.  Based on the facts before the Court and drawing all reasonable inferences in favor of Thomas—as the Court must

do—the Court finds Thomas' sex discrimination claim fails because he has not established that Ashton's reason for his employment termination was false, and that discrimination was the real reason. Thus, there is no genuine issue of material fact about whether Ashton's reason was a pretext for discrimination and Ashton is entitled to summary judgment.

## V.   CONCLUSION

Based on the foregoing discussion and analysis, Defendant's Motion for Summary Judgment (Doc. 56) is **GRANTED**.

**DONE** and **ORDERED** this the 18th day of February 2021.

                                           s/Terry F. Moorer
                                           TERRY F. MOORER
                                           UNITED STATES DISTRICT JUDGE